## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**Case No. 1:24-cv-21019-WILLIAMS/GOODMAN**

PATSY WATSON,

      Plaintiff,

v.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINE

      Defendant.

_____/

### REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

Patsy Watson ("Watson" or "Plaintiff") was a passenger on the Carnival *Mardi Gras.* On March 17, 2023, Plaintiff says, she "suddenly and without warning . . . slipped and fell on a puddle of liquid" as she "walked on the tile flooring through the casino." [ECF No. 20, ¶ 19]. Alleging physical, emotional, and economic injuries, including damages for permanent disability, scarring, disfigurement, and impairments, Plaintiff filed a Complaint [ECF No. 1] (and then a First Amended Complaint, [ECF No. 20 ("FAC")]) against Carnival Corporation ("Carnival" or "Defendant").[1]

---

[1]    Carnival filed a motion to dismiss [ECF No. 6], and Watson filed an unopposed Motion for Leave to File Amended Complaint, which the Undersigned granted. [ECF Nos. 17–18]. Carnival then filed a motion to dismiss [ECF No. 21] the FAC, which United States District Judge Kathleen M. Williams referred [ECF No. 23] to me.

The FAC is broken down into five counts: Count One is for "Negligence of Carnival;" Count Two is for "Negligent Failure to Warn;" Count Three is for "Negligent Training and Supervision;" Count Four is for "Negligent Design and Construction;" and Count Five is for "Vicarious Liability."

Plaintiff asks for compensatory damages "in a reasonable amount no greater than $2,250,000.00 or an amount determined by the jury in this cause sufficient to adequately compensate" her for her "harms and losses." *Id.* at 12, ¶ 2.

Carnival's dismissal motion [ECF No. 21] is based on six grounds: (VI)[2] the "Second Amended Complaint" is a comingled, shotgun pleading; (I) Plaintiff failed to properly plead actual or constructive notice by Carnival; (II) Plaintiff's Negligent Failure to Warn Claim is without merit (because she failed to properly plead Carnival's knowledge of the allegedly dangerous condition and that the condition was not open and obvious); (III) Plaintiff failed to properly plead negligent training and supervision (because she did not allege that Carnival had actual or constructive notice of crewmembers' unfitness and that Carnival failed to take corrective action based on its knowledge); (IV) Plaintiff failed to properly plead negligent design and construction (because she did not allege that Carnival did in fact take part in the design and

---

[2]     There is no "Second Amended Complaint." Apparently, defense counsel used a motion to dismiss from another lawsuit against a cruise ship operator as a template and did not make appropriate edits to customize the motion to the instant case. In any event, Carnival raised this argument as its last argument, in point "VI." For organizational purposes, it makes sense to address the "shotgun pleading" challenge first.

construction of the ship or the casino bar area); and (V) Plaintiff failed to properly plead vicarious liability (because she did not identify a certain employee and that employee's specific negligent action -- and did not allege that a specific crewmember owed her a duty of care and that the crewmember's negligent actions caused her harm.

Plaintiff filed an opposition response and Carnival filed a reply. [ECF Nos. 24; 25].

For the reasons outlined below, the Undersigned **respectfully recommends** that Judge Williams **grant** the motion and dismiss the FAC (albeit **without** prejudice and with **leave** to file a second amended complaint). At bottom, though, the FAC is problematic and inadequate because it is, from a substantive perspective, overly conclusory and devoid of sufficient specific factual allegations. The discussion below outlines the pleading problems.

## I.     Factual Background (*i.e.*, Plaintiff's Allegations)

The following allegations seem to concern all five counts of Plaintiff's FAC. It is difficult to discern which paragraphs concern specific counts, as Plaintiff did not allege a core set of facts applicable to all counts, reincorporate those paragraphs (but only those paragraphs) into each count and then add paragraphs unique to each ongoing, new count. Instead, the FAC numbers *all* paragraphs in ascending order, which seemingly suggests that all the paragraphs which preceded a specific count apply to each count, supplemented by the new paragraphs in the new count.

In any event, here are the more-relevant allegations of the paragraphs alleged before the FAC begins its count-by-count allegations:

21.     Carnival designed, constructed, participated in and/or approved of the final design, construction of and/or materials used in the construction of the entire Deck 7 of the *Mardi Gras*, including the location of, and materials used to construct, the floor of the casino and bar area.

22.     Carnival has installed and maintained over the years, [sic] a flooring in the casino bar area of it ships that is believed to be ceramic tile.

23.     The floor on which Plaintiff fell was unusually and dangerously slippery when wet.

24.     The tile did not have the proper level of slip resistance when wet.

25.     Carnival knows the properties of the tile floors and knows that they are extremely slippery when wet and if not maintained properly.

26.     Carnival further knows through its operation that spills routinely occur in the casino bar area.

27.     Carnival had knowledge that accumulations of liquid occur near the casino bar, as it is a recurrent and repetitive problem due to drinks being served in the area.

28.     In fact, as part of its process to train employees to work on its ships provides [sic] training materials which states [sic], "[s]pills are very common in high traffic areas like . . . public areas like Bars & Lounges, and are one of the leading causes of Guest Accidents" as show [sic] below:

[The FAC then inserts a page from a Carnival training document, entitled "2 Minute Trainer." The headline reads "Own the Spill," and it says, "Spills are very common in high traffic areas like Lido Restaurant / Beverage Stations, public areas like Bars & Lounges, and are one of the leading causes of Guest Accidents."]

29.     The casino bar area where Plaintiff fell is a high traffic area with drinks being served in the casino bar and is therefore generally one of the areas that falls [sic] repeatedly happen most often on Carnival ships, including the Carnival *Mardi Gras.*

4

30.     Because of the high propensity of spills in the area of the casino bar, Carnival knows it is important to inspect for spills on a regular basis, and to mop, clean, dry and otherwise maintain the tile floor in the casino bar area in the event of a spill.

31.     Carnival has notice of these repetitive, ongoing conditions and problems.

32.     The unusually slippery floor when wet constituted a dangerous condition.

33.     Despite the presence of a dangerous condition on March 17, 2023, there was no warning sign or other warning present in the area of the casino bar where Plaintiff fell to Plaintiff [sic] of the existence of a wet, slippery floor.

34.     The area of the casino bar where Plaintiff fell was not cordoned off to prevent passengers including Plaintiff from walking through the area where a wet, slippery floor was present.

35.     At all times herein, Plaintiff exercised ordinary care for her own safety.

36.     After the fall, Plaintiff immediately had extreme pain in her left knee, left hip and right shoulder.

37.     After her fall, Plaintiff was taken to the onboard infirmary, the Carnival *Mardi Gras* Medical Center, where she received medical treatment immediately after the injury.

38.     Carnival had notice of Plaintiff's fall as it was reported to infirmary staff and other ship personnel so that an investigation could be conducted.

39.     Plaintiff suffered serious and painful personal injuries, including a patella fracture, which required medical treatment and resulted in her incurring and becoming liable for medical expenses.

[ECF No. 20, ¶¶ 21–39].

The following allegations are from Count One:

40.     Carnival owed a duty to exercise reasonable care for the safety of its passengers including the Plaintiff.

41.     Carnival owed a duty of reasonable care to keep and maintain the vessel in a reasonably safe condition and to protect Plaintiff from unreasonable risks of harm on its vessel.

42.     Carnival has a duty of reasonable care under the circumstances to inspect for spills or accumulations of liquids, to clean and dry the areas, and to prevent passengers form [sic] accessing the area with the spills of the flooring by cordoning or blocking off the areas until the area was maintained and returned to a safe condition.

43.     Carnival's duties are non-delegable and even the slightest negligence renders it liable.

44.     On March 17, 2023, Carnival breached its duties and was negligent by failing to inspect for and to observe any clear water, liquid or other foreign substances from the flooring and failing to keep the floor clean and dry to allow normal and safe foot traffic.

45.     At all relevant times, Carnival, through its employees and/or agents, negligently failed to maintain the floor where Plaintiff fell under the circumstances in a reasonably safe condition.

46.     Carnival knew the casino bar area where Plaintiff fell was prone to spills due to the high number of spills in the high traffic area with drinks being served in the casino bar, which is generally one of the areas falls happen most often on Carnival ships.

47.     Carnival was negligent in the inspection and maintenance of the flooring in the casino bar area where Plaintiff fell.

48.     The manner in which Plaintiff fell and Plaintiff's resulting injuries were reasonably foreseeable to Carnival due to the high number of spills in a high traffic area with drinks like the casino bar, which is generally one of the areas falls happen most often on Carnival ships.

49.     Carnival's failure to maintain the vessel, including the floor, created a dangerous condition to everyone including Plaintiff.

50.     Carnival is guilty of negligence because it knew about this recurrent spill problem in the casino bar area and failed to address it on this day.

51.     Carnival had actual notice presence [sic] of liquid on the floor, or alternatively had constructive notice of the liquid on the floor such that it knew or should have known of the presence of the liquid on the floor.

52.     Carnival had actual and/or constructive knowledge of the dangerous condition, as the condition existed for such duration of time that it should have been discovered through the exercise of reasonable care.

53.     Carnival had constructive notice of the dangerous condition by[:] (a) the length of time the dangerous condition existed on the floor; (b) the nature of the dangerous condition, including that the condition existed on Deck 7 near the casino bar; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care, Carnival should have known about it.

54.     At all relevant times, Carnival, through its employees and/or agents, negligently failed to maintain the floor where Plaintiff fell under the circumstances in a reasonably safe condition.

55.     Carnival's failure to maintain the vessel, including the floor, created a dangerous condition to everyone including Plaintiff.

56.     Carnival had actual notice presence of liquid [sic] on the floor as multiple employees were present in the area who did or should have seen the spill.

57.     Alternatively, Carnival had constructive notice of the liquid on the floor such that it knew or should have known of the presence of the liquid on the floor because it existed for such a period of time that in the exercise of care, Carnival should have discovered the dangerous condition.

58.     Carnival is guilty of negligence because it knew spills in the casino bar area were a recurrent problem and failed to address it on this day.

59.     In the alternative, notice to Carnival is not required because Carnival (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged

in and was guilty of negligent methods of operations. Therefore, no notice to [ ] Defendant is required.

60.     As a direct and proximate result of Carnival's negligence, the Plaintiff fell and suffered injury.

*Id.* at 40–60.

The following allegations concern Count Two:

61.     Carnival was negligent in failing to warn of the dangerous condition in the floor of the casino bar area where Plaintiff fell.

62.     Carnival has a duty of reasonable care under the circumstances to warn about the dangerous condition with caution or warning signs and by posting personnel.

63.     Carnival breached its duties by failing to warn Plaintiff of the unusually slippery, dangerous floor.

64.     The failure to warn individuals regarding the dangerous condition constituted a hidden, latent defect that was unknown to Plaintiff which she could not discover through the exercise of reasonable diligence.

65.     On March 17, 2023, Carnival breached its duties and was negligent by failing to warn that the floor was slippery when wet.

66.     Carnival negligently failed to warn Plaintiff of the dangerous condition by posting warning signs or otherwise warn its passengers of the liquid or the dangerously slippery floor so that she could avoid injury.

67.     As a direct and proximate result of Carnival's negligent failure to warn, the Plaintiff fell and suffered injury.

*Id.* at 61–67.

The following allegations concern Count Three:

68.     At all relevant times herein, Carnival had a duty to train and properly supervise its employees to inspect and maintain the floors of the casino bar area, post warnings of any dangerous conditions and/or post personnel to protect passengers from the dangerous condition, and

8

remediate any dangerous conditions present, including spills or liquid accumulating on the floor.

69.     Carnival breached its duties and was negligent by failing to properly and reasonably train its employees in the proper methods to monitor the activities of people in the area, cleaning and drying of the flooring, posting warning notices, and cordoning or blocking off the area.

70.     Carnival further breached its duties and was negligent by failing to properly supervise its employees in the proper methods to inspect the floor of the casino bar, monitor the activities of people in the area, cleaning and drying of the flooring, posting warning notices, and cordoning or blocking off the area.

71.     As a direct and proximate result of Carnival's negligent training and supervision, [ ] Plaintiff fell and suffered injury.

*Id.* at 68–71.

The following allegations concern Count Four:

72.     Carnival had a duty to design and construct the vessel in a manner that met the minimum requirements for slip resistance in the flooring industry.

73.     Carnival was negligent and breached its duties and by failing to design and build the flooring in the casino bar area with sufficiently slip resistant materials.

74.     Carnival is guilty of negligence in that it knew or should have known the floor had a lack of slip resistance in general, especially when wet.

75.     Carnival failed to add or replace the floors with materials that were slip-resistant and/or not dangerously slippery when wet.

76.     Carnival created the dangerous condition which caused Plaintiff's fall by installing or causing to be installed the tile which was unusually and/or dangerously slippery when wet.

77.     Carnival further negligently designed the area by failing to provide a mat or other floor covering the slippery floor [sic] when it knew or should have known the area of the casino bar was prone to spills.

9

78.     Carnival was further negligent and breached its duties by failing to change or add slip resistant materials to the floor to prevent dangerous conditions such as the unusually slippery, dangerous [sic] in this case.

79.     As a direct and proximate result of Carnival's negligent design and construction of the flooring in the casino bar area, the Plaintiff fell and suffered injury.

*Id.* at 72–79.

The following allegations concern Count Five:

80.     At all relevant times, the individuals who constructed, designed, inspected, and/or maintained the Carnival *Mardi Gras* were employees, agents, or both, of Carnival.

81.     At all relevant times herein that Carnival's employees and/or agents were negligent as set forth herein, and in the commission of their negligent actions or omission, Carnival's employees were in the course and scope of their employment or agency for Carnival such that the Carnival [sic] is vicariously liable under the doctrine of *respondeat superior* for its employees' negligent actions or omissions.

*Id.* at 80–81.

## II.     <u>Applicable Legal Standards and Analysis</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed

factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint **as true** and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not "require that a plaintiff specifically plead every element of a cause of action." *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594, at *6 (S.D. Fla. Sept. 14, 2009) (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), which, in turn, cited Jack H. Friedenthal, et al., Civil Procedure, § 5.7 (2d ed. 1993) for the view that "[w]hat the pleader need not do is worry about the particular form of the statement or that it fails to allege a specific fact to cover every element of the substantive law involved.").

To properly plead a claim for negligence under the general maritime law of the United States, a plaintiff must allege that: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual

harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

To survive a motion to dismiss, a plaintiff must plead sufficient facts to support each element of his direct liability negligence claims (as opposed to vicarious liability, which is not adequately alleged here),[3] including that the defendant had "actual or constructive notice of [a] risk-creating condition," at least where the risk is one commonly encountered on land and not clearly linked to nautical adventure. *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022); *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 212 (2022).

In *Newbauer,* the Eleventh Circuit affirmed a district court's granting of a cruise-ship operator's motion to dismiss when the court found that Newbauer failed to provide any factual allegations to support her claim that Carnival had actual or constructive notice of the hazard which allegedly caused her injury. 26 F.4th at 935–36 The plaintiff cruise-passenger alleged she was injured when she slipped and fell on a wet, slippery transitory substance on the cruise ship's Lido deck. *Id.* at 933. The passenger filed suit against the cruise ship operator, alleging that it negligently failed to maintain the area and/or warn her of the condition. *Id.*

---

[3]     As outlined later in this Report and Recommendations, Plaintiff's vicarious liability theory is actually a direct liability theory masquerading as a vicarious liability claim.

In dismissing Newbauer's claims, the district court found that "[n]one of the [p]laintiff's allegations suggest Carnival was on constructive notice, let alone actual notice, of the hazard complained of because the [p]laintiff's complaint fails to satisfy applicable federal pleading standards under Federal Rule 8 and the *Iqbal/Twombly* standard." *Newbauer v. Carnival Corp.*, No. 20-23757-CIV, 2021 WL 723164, at *2 (S.D. Fla. Feb. 24, 2021), *aff'd*, 26 F.4th 931 (11th Cir. 2022). In affirming the district court's decision, the Eleventh Circuit similarly concluded that the passenger "failed to include any **factual** allegations that were sufficient to satisfy the pleading standard set forth in *Iqbal* and *Twombly* such that it is facially plausible that Carnival had actual or constructive notice of the dangerous condition." *Newbauer*, 26 F.4th at 935 (emphasis added).

More recently, the Eleventh Circuit again reaffirmed the principle that, "to survive [a] motion to dismiss" the plaintiff must "plead sufficient facts to support each element of his claim, including that [the defendant] had actual or constructive notice about the dangerous condition." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1095 (11th Cir. 2022). In *Holland,* the plaintiff cruise passenger filed suit against the cruise ship operator, alleging he was injured when he slipped and fell while descending a glass staircase in a highly trafficked area of the ship. *Id.* at 1091. Holland alleged facts that made it possible that the cruise line had notice of the allegedly dangerous condition, but he failed to provide factual allegations that plausibly suggested the cruise line had notice, actual or constructive, of the dangerous condition. "Simply put, Holland's allegations [did] not

cross the line from possibility to plausibility of entitlement to relief." *Id*. at 1096 (citing *Iqbal*, 556 U.S. at 678).

In the present case, the FAC contains mostly threadbare recitals of the elements and conclusory allegations which are insufficient to plead notice under the current Eleventh Circuit law established by *Newbauer* and *Holland*. *See generally Beck v. Carnival Corp.*, No. 23-24636, 2024 WL 2939074, at *3 (S.D. Fla. June 11, 2024) (granting cruise ship operator's motion to dismiss three counts of direct negligence in lawsuit filed by passenger who tripped and fell while walking down the vessel's gangway for failure to adequately allege notice because the allegations are "conclusory and speculative").

The Eleventh Circuit recently acknowledged its rules about the importance of properly alleging notice in personal injury lawsuits against cruise ships in *Patton v. Carnival Corp.*, No. 22-13806, 2024 WL 1886504 (11th Cir. Apr. 30, 2024) (affirming order dismissing trip-and-fall complaint arising from an improperly affixed metal threshold extending across a highly trafficked hallway).

The *Patton* Court rejected the plaintiff's argument that her complaint should survive Carnival's dismissal motion because the relevant evidence is "wholly under the control of the cruise line," and, at the pleadings stage, all she "can reasonably know about the cause" of her injury is whatever observations she could make "at or shortly after" it happened. *Id*. at *3. Significantly, the *Patton* Court explained that the plaintiff "misunder[stood]" her pleadings burden, and elaborated that:

14

She is *not* required, at the pleading stage, to *know* that Carnival had constructive knowledge of the threshold's dangerous condition. She only needed to **allege plausible facts** that Carnival had constructive notice of the dangerous condition. **So long as she had a good-faith basis, she could've made these allegations even though she did not have access yet to evidence supporting them.** *See* Fed. R. Civ. P. 11(b)(3) (allowing pleaders to make factual allegations that they believe "will likely have evidentiary support after a reasonable opportunity for further investigation *or discovery*"). But, because the complaint doesn't allege plausible facts that Carnival had constructive notice of the raised threshold, we must affirm the dismissal of her complaint.

*Id.* (emphasis added).

### Shotgun Pleading

A shotgun pleading is a pleading that is "virtually impossible to know which allegations of facts are intended to support which claim(s) for relief." *Anderson v. Dis. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). In *Weiland*, the Eleventh Circuit established four types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts[;]" (2) a complaint with "conclusory, vague, and immaterial facts not obviously" associated with a specific cause of action; (3) a complaint that fails to set out each claim into various counts; and (4) a complaint with "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

"Shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as 'fatally defective.'" *Smith v. Carnival Corp.*, No. 22-cv-22853, 2022 WL 16791783, at *2 (S.D. Fla. Nov. 8, 2022) (granting cruise ship operator's motion to dismiss and quoting *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009)). "Overall, shotgun pleadings do not establish a connection between 'the substantive count and the factual predicates . . . [and] courts cannot perform their gatekeeping function with regard to the averments of [the plaintiff's claim]." *Id.* (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006)).

As noted above in the citation to *Weiland*, the Eleventh Circuit has identified four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as [the Eleventh Circuit's] published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

792 F.3d at 1321–23 (footnotes omitted).

Plaintiff argues that her FAC cannot be an impermissible shotgun pleading because it "separates her allegations of negligence into five direct causes of action," a scenario she says means that she has complied with *Weiland*. [ECF No. 24, p. 1]. The Undersigned disagrees. While separating her negligence theories into different counts surely addresses *some* of the sins pinpointed in *Weiland*, that development is not a cure-all for *all* possible pleading ills.

For example, the FAC is still riddled with conclusory and vague allegations about Carnival's alleged notice. Furthermore, it comingles claims for direct negligence with claims for vicarious liability under the *respondeat superior* doctrine. Courts in our district have faulted plaintiffs' lawyers for this approach in cruise ship personal injury lawsuits like the instant case. *See Holland*, 50 F.4th at 1093–94 (noting that "direct liability and vicarious liability are very different concepts," and the plaintiff "improperly tried to blend them into a single theory of liability against Carnival").

For example, the *Smith* Court agreed with the defendant (which happened to also be Carnival) that the vicarious liability allegations failed because they contained no factual allegations about any duty breached by a crewmember or about any allegations that a crewmember's misconduct related to the plaintiff's slip and fall. 2022 WL 16791783, at *4. The plaintiff there identified the crewmember supposedly liable, the date on which that crewmember's negligence occurred and the location of the employee's negligent conduct -- and the Court *still* found the allegations inadequate (because the FAC did not

adequately allege "negligence committed by *that* tortfeasor"). *Id*. (emphasis in original).

Here, the FAC does not even provide the name of a specific crewmember, and the allegations mix direct liability theories with vicarious liability theories. *See also Gharfeh v. Carnival Corp.*, 17-20499-CIV, 2018 WL 501270, at *6 (S.D. Fla. Jan. 22, 2018) (finding that where a count contained a title suggesting it contains only a claim for vicarious liability, but it also includes allegations of direct negligence, it is "an example of an impermissible shotgun pleading and it needs to be clarified."). *Cf. Guerra v. MSC Cruises, S.A.*, No. 23-23366, 2024 WL 402636 (S.D. Fla. Feb. 2, 2024) (striking cruise ship personal injury lawsuit as an impermissible shotgun pleading).

The Undersigned therefore **respectfully recommends** that the FAC be **dismissed**, albeit **without prejudice**, and **with leave to amend**, as an unacceptable shotgun pleading.[4]

<u>*Actual or Constructive Notice*</u>

A cruise ship carrier like Carnival must have had "actual or constructive notice of the risk-creating condition" in order to be held liable under a direct negligence theory. *Chaparro*, 693 F.3d at 1335.

---

[4]   Although the FAC impermissibly comingled different theories of liability in Count Five, it also asserted vague and overly conclusory allegations in the *other* counts. Those problems with the nature of the allegations relate to *both* the shotgun pleading rule and the need to plausibly allege the requisite elements of all the counts.

18

Actual notice exists when the defendant knows about the dangerous condition. But if the allegations of actual notice "are indeed more conclusory than factual, then the court does not have to assume their truth." *Newbauer*, 26 F.4th at 934 (quoting *Chaparro*, 693 F.3d at 1337).

As to pleading constructive notice, a plaintiff must "plausibly allege" that either: (1) the hazardous condition existed for a sufficient length of time; or (2) substantially similar incidents occurred in which "conditions substantially similar to the occurrence in question must have caused the prior accidents." *Holland*, 50 F.4th at 1096. (citing *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710 (11th Cir. 2019)).

To survive a motion to dismiss a direct negligence claim aboard a cruise ship, a plaintiff must adequately plead the carrier's actual or constructive notice. While constructive notice may be established if the risk-creating condition existed for a sufficient period of time or there were substantially similar incidents where conditions substantially similar to the occurrence in question must have caused the prior accident, mere assertions of "only conclusory allegations" without accompanying factual support are insufficient to cross the line from possible to plausible. *Holland*, 50 F.4th at 1095; *see also Newbauer*, 26 F.4th at 935 (allegations of constructive notice of a wet substance on the deck because it was in a "high traffic dining area" were insufficient because they failed to "provide any factual allegations supporting the notion that high traffic in the area gave Carnival notice of the condition").

Plaintiff seeks to establish Defendant's constructive notice by asserting the "length of time the dangerous condition existed on the floor[.]" [ECF No 20, ¶ 53]. Without more-specific and detailed factual allegations, this detail-free statement fits squarely into the category of statements deemed insufficient by the *Newbauer* Court. 26 F.4th at 936.

Likewise, the *Newbauer* Court specifically noted the plaintiff's allegation "that Carnival had actual or constructive knowledge of the hazard based on the 'regularly and frequently recurring nature of the hazard in that area[,]'" to be another form of conclusory allegation impermissible under the *Iqbal* standard. *Id*. This sort of impermissible conclusory statement is repeated here, as Plaintiff alleges that Carnival "knew about this recurrent spill problem in the casino bar area and failed to address it on this day" -- without providing any factual support. [ECF No. 20, ¶ 50].

In her opposition, Plaintiff seems to have abandoned her claim that "the condition existed for such duration of time that it should have been discovered through the exercise of reasonable care," [ECF No. 20, ¶¶ 52, 53, 57], stating that "Plaintiff need *not* allege that a hazardous condition existed for a sufficient length of time when prior similar instances are identified." [ECF No. 24, p. 6 (emphasis added)].

Instead, Plaintiff seemingly shifts her notice argument to a theory of constructive notice based on prior similar incidents, describing the standard relating to substantial similarity and pointing to situations in which the court held that a single prior incident established notice. [ECF No. 24, p. 6].

Plaintiff states that "[she] identifies prior slips and falls including the general location of the falls." [ECF No. 24, p. 7]. This statement concerning the identification of prior slip and falls is plainly incorrect. Neither Plaintiff's FAC nor her Response <u>identify a single prior incident</u> of substantial similarity. [ECF No. 24]. In fact, Plaintiff does not point to any specific instance at all.

Plaintiff's FAC references a "recurrent spill problem," alleging that "Carnival knew that the casino bar area where Plaintiff fell was prone to spills due to the high number of spills in high traffic areas with drinks being served in the casino bar, which is generally one of the areas falls happen most often on Carnival ships." [ECF No. 20, ¶ 50, 46]. But this type of superficial statement does not identify prior slips and falls, including the general location of the falls, as Plaintiff indicates.

In fact, this sort of barebones and conclusory allegation is roundly condemned in the Eleventh Circuit. *Foley v. Carnival Corp.*, No. 23-cv-23025, 2024 WL 361189, at *5 (S.D. Fla. Jan. 31, 2024) ("Plaintiff's statements that [a] defendant had notice of the dangerous condition because of the 'length of time' it existed and because of the 'high traffic nature of the Lido Deck,' with nothing more, are insufficient to allege notice." (quoting *Fawcett v. Carnival Corp.*, 682 F. Supp. 3d 1106, 1110 (S.D. Fla. 2023))).

As noted by Carnival in its Reply, Plaintiff's allegations mirror the similar, yet insufficient, allegations in *Holland*. In *Holland*, the plaintiff alleged there were "frequent[ ] spills on the staircase," which Carnival was "aware of due to the frequent nature of prior

21

slip and fall incidents on this staircase." *Holland,* 50 F.4th at 1091.The Court held that "the inferential leap from Holland's premise -- that the staircase is highly visible and well-trodden -- to his conclusion -- that the hazard existed for a sufficient length of time – [was] too great." *Id*. at 1096.

The *Holland* Court reached this holding in the face of the following allegations: (1) the glass staircase (on which the plaintiff slipped and fell due to a hazardous substance) was in a highly trafficked area; (2) several hundred passengers and crewmembers traversed the staircase every day; (3) many of those walking on the staircase carried drinks; (4) crewmembers working in shops surrounding the staircase had a clear, unobstructed view of the staircase; (5) Carnival was aware of frequent spills on the staircase because of the "frequent nature" of prior slip and fall incidents on this staircase; (6) crewmembers could see spills as they happen; (7) crewmembers could see foreign substances left on the staircase by the spills; (8) at the time Holland fell, "the surrounding shops were staffed with crewmembers who had been present in their shops for approximately four hours or more;" and (9) safety agencies had developed safety standards applicable to the staircase in question. *Id.* at 1095.

Here, Plaintiff similarly attempts to point to the high traffic of the casino area and frequency of spills as sufficient to establish notice [ECF No. 24, p. 2], but the allegations are *less* robust than those in *Holland* (and the claim should likewise be dismissed).

Plaintiff also seeks to rely on safety standards, but, for reasons explained below, those standards are insufficient to generate the requisite factual allegations necessary to adequately plead notice.

Plaintiff indicates that the internal safety materials presented in her FAC demonstrate "a reasonable tendency for the type of hazard at issue." *Id.* at 5. The "internal safety documents" Plaintiff references appear to be only the "own the spill" training material, [ECF No. 20, ¶ 28], indicating spills in high traffic areas should not be ignored by crew members.

But the plaintiff in *Holland* also claimed that various safety agencies had "developed safety standards applicable to [the] staircase [at issue]," which "in and of themselves constitute[d] constructive notice that conditions in violation of th[ose] standards are hazardous." 50 F.4th at 1092. Just as in *Holland*, the safety concern here is extraordinarily **general**, and thus fails to adequately allege liability by merely establishing *possibility* and not **plausibility**.[5] *Id.* at 1096 (emphasis supplied) (citing *Iqbal*, 556 U.S. at 678).

More recently, in *Patton*, the Eleventh Circuit Court of Appeals upheld dismissal of a claim for failure to adequately plead notice because the company safety documents attached to the complaint which indicated that thresholds could be dangerous did not

---

[5]     Carnival's Reply incorrectly argues that the safety standard "fails to establish liability by merely establishing possibility and not **probability**." [ECF No. 25, p. 6 (emphasis supplied)]. As noted, the applicable legal standard is *plausibility*, not probability.

put the company on notice and only "vaguely reference[d] potential dangers related to thresholds." 2024 WL 1886504, at *2.

To be sure, Carnival has an "own the spill" policy, but this does not automatically put it on notice of every transitory substance across all cruise ships at all times. In addition to the vague scope of this policy, nowhere in her FAC or Response does Plaintiff allege that the "puddle of liquid" she allegedly slipped in was the result of a spilled **beverage,** which is what Carnival's "own the spill" policy specifically targets. [ECF No. 20, ¶ 28].

At bottom, Plaintiff's argument exemplifies the "general foreseeability theory of liability" warned of in *Navarro v. Carnival Corp.*, No. 19-21072, 2020 WL 1307185, at *4 (S.D. Fla. March 19, 2020). This theory "has been roundly rejected by federal courts because it would essentially convert a carrier into an insurer of passenger safety." *Id*. In the absence of any allegation as to actual notice or a hazard existing for a sufficient length of time, and a total failure to identify an actual prior similar incident, Plaintiff's assertion of notice rests largely on a general "own the spill" policy -- and that is wholly insufficient to establish notice.

Thus, the Undersigned concludes that the FAC fails to adequately establish actual or constructive notice for the direct liability strand of Plaintiff's negligence claims.

### *Failure To Warn*

Although the question of whether a danger is open and obvious is an issue of fact which is premature for a ruling at the motion to dismiss stage, a plaintiff is still "required

to allege that the danger was not open and obvious" to state a negligent-failure-to-warn claim. *Green v. Carnival Corp.*, 614 F. Supp. 3d 1257, 1264 (S.D. Fla. 2022) (citing *Spall v. NCL (Bahamas) Ltd.*, 275 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016); *see Fawcett v. Carnival Corp.*, 682 F. Supp. 3d 1106 (S.D. Fla. 2023) (same).

Therefore, a motion to dismiss is properly granted where the plaintiff fails "to allege that any danger was not open and obvious to [the] [p]laintiff." *Spall,* 275 F. Supp. 3d at 1349 (quoting *Lapidus v. NCL Am. LLC*, 924 F. Supp. 2d 1352, 1356 (S.D. Fla. 2013)). *See also Navarro*, 2020 WL 1307185, *2 (holding that a plaintiff must sufficiently "allege that the risk creating condition was not open and obvious").

In response to this challenge, Plaintiff contends that "the allegations in the [FAC] set forth that the dangerous condition which caused Plaintiff to slip and fall was not open or obvious to [ ] Plaintiff." [ECF No. 24, p. 9]. But Plaintiff has failed to explain how the allegation that the "dangerous condition constituted a hidden, latent defect that was unknown to Plaintiff which she could not discover through the exercise of reasonable diligence" is sufficient to allege that the dangerous condition was "not open and obvious." [ECF No. 20, ¶ 64].

This assertion fails to sufficiently allege that any danger was not open and obvious. Instead, Plaintiff merely alleges the condition was "hidden," but she does not provide any factual support to assist this claim. Additionally, how an alleged transitory substance is a "hidden defect" is unclear.

Given that Plaintiff will be filing a second amended complaint to address the other inadequacies in the FAC, she might as well clean up the fuzzy allegations concerning the failure to warn claim.

<u>Plaintiff Never Responded to Several Other Challenges</u>

Carnival's dismissal motion also targeted the claims for vicarious liability, negligent training and supervision, and negligent design and construction. But Plaintiff failed to respond to any of those arguments. The consequence of these omissions is straightforward: Plaintiff implicitly **conceded** the points raised by Carnival and abandoned arguments she could have made in response.

"[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (quoting *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004)); *see also Hartford Steam Boiler Inspection & Ins. Co. v. Brickellhouse Condo. Ass'n, Inc.*, No. 16-cv-22236, 2016 WL 5661636, at *3 (S.D. Fla. Sept. 30, 2016) (holding that the plaintiff "impliedly concede[d]" a point by failing to address the defendant's argument); *Cf. Foster v. Coca-Cola Co.*, No. 6:14-cv-2102, 2015 WL 3486008, at *1 (M.D. Fla. June 2, 2015) ("When a party fails to respond, that is an indication that the motion is unopposed.").

Therefore, Plaintiff has impliedly conceded to the insufficiency of Count Three (Negligent Design and Construction),[6] Count Four (Negligent Training and Supervision),[7] and Count Five (Vicarious Liability)[8] in her FAC.

Likewise, Plaintiff's failure to respond to these arguments also means that she has

---

[6] The negligent design and construction count is also deficient. It does not, as required, allege Carnival's actual involvement in the design and construction process. "Liability based on negligent design requires proof that the ship-owner or operator actually created, participated in or approved the alleged improper design." *Lemquist v. Carnival Corp.*, 2023 U.S. Dist. LEXIS 32032, at *12–13 (S.D. Fla. 2023). Moreover, a defendant can only be liable for a negligent design "if it had actual or constructive notice of such a hazardous condition," *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012), and that was not alleged either.

[7] This count is substantively inadequate, as it does not, as required, identify any actual policies or training procedures to demonstrate inadequate training of employees. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) ("[T]o state a claim for negligent training, [the plaintiff] must show [the defendant] was negligent in the implementation or operation of the training program." (alterations added)). "[I]t is well settled that general maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021) (citing *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 910 (11th Cir. 2017) ("No court has ever held that this claim [for "having a negligent mode of operation" -- exists in federal admiralty law," as "general maritime law does not recognize a claim of negligence that is premised upon a company's *general* policies and operations") (emphasis supplied)).

[8] This count is substantively problematic, in any event, because it appears to be a disguised direct liability claim which is designed to avoid the notice requirement for a direct negligence theory. *See Holland*, 50 F.4th at 1095 (holding that plaintiff supported his so-called vicarious liability claims only with allegations relevant to a direct liability claim, which means notice was still required); *see also Britt v. Carnival Corp.*, 580 F. Supp. 3d 1211, 1215 (S.D. Fla. 2021) (granting motion to dismiss after finding that "the employees' negligent mopping [was] in fact a claim for negligent maintenance of [the] [d]efendant's premises and negligent failure to warn" and therefore required notice); *Worley v. Carnival Corp.*, No. 21-23501, 2022 WL 845467 (S.D. Fla. Mar. 22, 2022) (finding that failure to maintain and failure to warn claims, regardless of how pled, are direct liability claims and thus require notice).

"**abandoned**" those claims. *See Jones,* 564 F. App'x at 434. *See also Naval Logistic, Inc. v. M/V Family Time*, No. 23-22379, 2024 WL 3691535 (S.D. Fla. Aug. 6, 2024) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned."); *MSC Trading, S.A. v. Delgado*, No. 22-cv-20075, 2024 WL 3564584 (S.D. Fla. July 29, 2024) (same).

### III.   Conclusion

The Undersigned **respectfully recommends** that Judge Williams **grant** Carnival's motion to dismiss and **dismiss** the FAC, albeit **without prejudice** and with **leave to amend**. To the extent that this ruling concludes that Plaintiff abandoned certain claims or conceded they were insufficient, she will have the opportunity to pursue them again if she has sufficient facts and can do so under her Rule 11 obligations.

### IV.   Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, August 21, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to:</u>**
The Honorable Kathleen M. Williams
All Counsel of Record